UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRANDON S. WARE,

    Petitioner,

v.                                        Case No. 8:11-cv-418-T-33AEP

SECRETARY, DEPARTMENT OF CORRECTIONS,

    Respondent.
_____

## **O R D E R**

This cause is before the Court on Petitioner Brandon Ware's 28 U.S.C. § 2254 petition for writ of habeas corpus. Ware challenges his conviction and sentence entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida.

A review of the record demonstrates that, for the following reasons, the petition must be **denied.**

## **BACKGROUND**

On December 18, 2002, Ware was charged by Information with Murder in the First Degree and Home Invasion Robbery. (Exhibit 1, vol. 1, pg. 7-8). The facts of this case are found in the Initial Brief filed in Ware's direct appeal (Exhibit 2), which are summarized as follows:

The State's evidence showed that the victim, eighty-eight year old Vernon Gilbert, resided with his wife of sixty years, Helen Gilbert, who was eighty-seven years old at the time of the offense. (Exhibit 1, vol. 7, T. 395). The couple lived in their third-floor apartment in the Townarms Apartments at 911 Washington in Largo, Florida, where they had lived for thirty-two years. (Exhibit 1, vol. 7, T. 395).

The Gilberts shopped weekly at a Publix grocery store directly across the street from their apartment building, following a pattern developed over many years. (Exhibit 1, vol. 8, T. 402, 421). Ware was employed as a cook by a Beef O'Brady's restaurant located next to the Publix the Gilberts frequented.

On November 26, 2002, a Publix employee, Catherine Beck, observed the Gilberts shopping and noted Ware was "around them often." (Exhibit 1, vol. 8, T. 433). Beck testified she saw the Gilberts leave the store and Ware "walked out like a couple of minutes afterwards." (Exhibit 1, vol. 8, T. 436-37). A short time after the Gilberts had been seen in the Publix store, Vernon Gilbert called 911 from his home phone and stated, "Send the police quick...I just shot a guy in here robbing us."

The police officer who responded to the Gilberts' apartment found a Publix shopping cart with groceries in it outside the front door of the Gilberts' apartment. (Exhibit 1, vol. 8, T. 418). After entering the apartment, the officers found Ware lying on his back with blood on his face and a revolver in his hand. (Exhibit 1, vol. 8, T. 452- 4). The officers saw that Ware had been shot in his back and on the right side of his face. (Exhibit 1, vol. 8, T. 455). The officers saw groceries on the floor and on the kitchen counter. (Exhibit 1, vol. 10, T. 759).

The officers found Mr. Gilbert's body "down the hallway" of the apartment. (Exhibit

1, vol. 8, T. 480). The autopsy report established that the 113-pound man died from a gunshot wound located two inches behind his ear. (Exhibit 1, vol. 10, T. 716-18).

The officers found a disoriented, dysfunctional, and blood covered, Mrs. Gilbert in the apartment. (Exhibit 1, vol. 8, T. 480). Mrs. Gilbert suffers from advanced Alzheimers and could not assist in the investigation. (Exhibit 1, vol. 8, T. 404-05, 480). Mrs. Gilbert had also suffered a head injury during the offense. (Exhibit 1, vol. 10, T. 747).

The police found that Ware's pockets contained jewelry, keys, chains, and knives. (Exhibit 1, vol. 8, T. 455). The police found a Publix bag containing jewelry and other items of value on the floor near Ware. (Exhibit 1, vol. 10, T. 752).

The revolver, which had been found by the police in Ware's hand at the scene of the offenses, contained four fired rounds and two unfired shells. (Exhibit 1, vol. 9, T. 536). The bullets recovered from both Mr. and Mrs. Gilbert had been fired by the revolver found in Ware's hand. (Exhibit 1, vol. 10, T. 752). DNA analysis established the existence of Ware's DNA on the weapon, throughout the Gilbert's apartment, and on both Mr. and Mrs. Gilbert's bodies. (Exhibit 1, vol. 10, T. 730-41).

After a six day hospitalization, Ware was arrested, He made no statements to the police. (Exhibit 1, vol. 10, T. 808). On October 21, 2004, after a four-day jury trial, Ware was found guilty as charged. (Exhibit 1, R. 145-47). On March 23, 2005, Ware was sentenced to life imprisonment on the charge of Murder in the First Degree and thirty years imprisonment on the charge of Home Invasion Robbery, to run concurrent with Ware's life sentence. (Exhibit 1, vol. 2, pg. 340-51).

## Direct Appeal

Ware timely filed his Notice of Appeal on March 31, 2005. (Exhibit 1, vol. 2, pg. 352).

On July 15, 2005, Ware's appellate attorney filed an *Anders* brief. *Anders v. California*, 386 U.S. 738 (1967). (Exhibit 2). The attorney stated he could not find any "meritorious argument to support the contention the trial court committed significant reversible error." (Exhibit 2, p. 4). Ware did not file a pro se brief. On August 25, 2005, the State filed its *Anders* brief. (Exhibit 3).

The second district court of appeal per curiam affirmed Ware's convictions and sentences on December 9, 2005. *Ware v. State*, 916 So. 2d 804 (Fla. 2nd DCA 2005)(Table). (Exhibit 4). The Mandate issued December 30, 2005. (Exhibit 5). Ware did not file a petition for writ of certiorari in the United States Supreme Court, but pursuant to case law, was allowed 90 days following December 9, 2005, or until March 9, 2006, before his conviction became final on direct appeal.

**Motion for 3.850 Post-Conviction Relief**

Ware filed a timely rule 3.850 motion for postconviction relief on October 31, 2006, raising six grounds for relief: 1) Ware was deprived of his right to effective assistance of trial counsel when trial counsel failed to object to improper comments made during opening and closing arguments; 2) Ware was deprived of his right to effective assistance of trial counsel when trial counsel failed to object to irrelevant and unduly prejudicial evidence; 3) Ware was deprived of his right to effective assistance of trial counsel when trial counsel failed to object to hearsay testimony concerning the alleged "alibi" of another suspect and the alleged verification of the fingerprint analysis; 4) Ware was deprived of his right to effective assistance of trial counsel when trial counsel was rendered ill during the trial; 5) Ware was deprived of his right to effective assistance of trial counsel based on the cumulative errors; 6) Ware was deprived of his right to a fair trial where the trial judge was

engaging in misconduct during the trial. (Exhibit 6).

The state trial court denied the rule 3.850 motion on February 19, 2008. (Exhibit 10). Ware filed a Notice of Appeal on March 17, 2008. (Exhibit 11). The state district court of appeal per curiam affirmed the denial of postconviction relief on July 25, 2008. *Ware v. State*, 988 So.2d 1104 (Fla 2nd DCA 2008)(Table). (Exhibit 13). On August 11, 2008, Ware filed a Motion for Rehearing or Clarification. (Exhibit 14). On August 22, 2008, the state district court of appeal denied the motion. (Exhibit 15). On September 9, 2008, the Mandate issued. (Exhibit 15).

## Petition for Writ of Habeas Corpus Construed as Second Motion for 3.850 Post-Conviction Relief

On November 17, 2008, Ware filed a Petition for Writ of Habeas Corpus in the state trial court. This petition, filed pursuant to Chapter 79, Florida Statutes, Florida Rule of Criminal Procedure 3.850(h),[1] and Florida Rule of Civil Procedure 1.630(d)(5) was filed

---

[1] The last clause of rule 3.850(h) might suggest that it is permissible to file a petition for writ of habeas corpus to test the legality of a prisoner's criminal judgment rather than to seek relief through an appropriate postconviction motion. However, the courts of this state have correctly interpreted this provision to mean that "habeas corpus may not be used as a substitute for an appropriate motion seeking postconviction relief pursuant to the [rule]." *Harris v. State*, 789 So.2d 1114, 1115 (Fla. 1st DCA 2001); *see also Leichtman v. Singletary*, 674 So.2d 889, 891 (Fla. 4th DCA 1996) ("The remedy of habeas corpus is not available as a substitute for post-conviction relief under rule 3.850, Florida Rules of Criminal Procedure."). Nor can habeas corpus be used as a means to seek a second appeal or to litigate issues that could have been or were raised in a motion under rule 3.850. *See Breedlove v. Singletary*, 595 So.2d 8, 10 (Fla.1992) ("Habeas corpus is not a second appeal and cannot be used to litigate or relitigate issues which could have been ... or were raised on direct appeal."); *Mills v. Dugger*, 574 So.2d 63, 65 (Fla.1990) ( "[H]abeas corpus is not to be used 'for obtaining additional appeals of issues which were raised, or should have been raised, on direct appeal or which were waived at trial or which could have ... or have been, raised in' prior postconviction filings."); *see also Patterson v. State*, 664 So.2d 31, 32 (Fla. 4th DCA 1995) (affirming circuit court's denial of petition for writ of habeas corpus "[b]ecause it [was] apparent that [the] Defendant [was] seeking an untimely motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850").

5

more than two years after March 9, 2006, the date Ware's conviction was final on direct appeal. (Exhibit 16). On February 14, 2009, the state trial court dismissed the filing in a written order, as an untimely, successive motion for postconviction relief. (Exhibit 17). The trial court stated: "Defendant has failed to demonstrate how the allegations in his petition meet any of the exceptions which would allow a defendant to file a motion for post-conviction relief outside the two-year time limitation imposed by rule 3.850(b)." (Exhibit 17). Ware filed a Notice of Appeal on April 15, 2009. (Exhibit 18). The state district court of appeal per curiam affirmed the denial of postconviction relief on March 3, 2010. *Ware v. State*, 29 So.3d 305 (Fla 2nd DCA 2010)(Table). (Exhibit 20). The Mandate issued March 29, 2010. (Exhibit 21).

### Third Motion for 3.850 PostConviction Relief

On August 24, 2009, Ware filed a Motion to Vacate, Set Aside, or Correct Sentence, alleging the discovery of new evidence. (Exhibit 22). The state trial court found Ware's motion to be a successive postconviction motion which was untimely filed, as the two-year time limitation imposed by rule 3.850(b) had expired in December 2007. (Exhibit 23). The state trial court only considered the motion because Ware claimed newly discovered evidence. (Exhibit 23). On January 15, 2010, the state trial court denied Ware's untimely, successive motion for postconviction relief finding that Ware failed to show: 1) the evidence could not have been ascertained by use of due diligence at the time of his trial; 2) the evidence was insufficient to establish he would probably be acquitted in light of the evidence; and/or, 3) Ware failed to establish how his claim met any of the exceptions for

extending the two-year limitation imposed by rule 3.850. (Exhibit 23).

On February 9, 2010, Ware filed a Notice of Appeal. (Exhibit 24). On November 5, 2010, the second district court of appeal per curiam affirmed the denial of postconviction relief. *Ware v. State*, 52 So.3d 671 (Fla 2nd DCA 2010)(Table). (Exhibit 26). Ware filed a Motion for Rehearing on November 12, 2010. (Exhibit 27). The state district court of appeal denied the motion for rehearing on January 19, 2011. (Exhibit 28). The Mandate issued February 11, 2011. (Exhibit 29). Ware filed the present petition for writ of habeas corpus on February 25, 2011.

## WARE'S PRESENT PETITION IS TIME-BARRED

Ware's 28 U.S.C. § 2254 petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. The AEDPA established a one-year statute of limitations for federal habeas corpus actions, 28 U.S.C. § 2244(d)(1). Subsection (2) of § 2244(d) provides that the "time during which a **properly filed** application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." (Emphasis added).

### Analysis of Timeliness

Ware's direct appeal of his convictions and sentences was affirmed by the state district court of appeal on December 9, 2005. Ware then had ninety days to seek certiorari review in the United States Supreme Court. This ninety-day period tolled the AEDPA one-year statute of limitations period until March 9, 2006. See 28 U.S.C. § 2244(d)(1)(A); Supreme Court Rule 13(3); *Nix v. Sec'y for Dep't of Corr.*, 393 F.3d 1235, 1236-37 (11th Cir. 2004)(Florida prisoner's conviction became "final" for AEDPA purposes on date that

90-day period for seeking certiorari review expired.).

Ware timely filed his first motion for 3.850 postconviction relief on October 31, 2006. Ware's motion for postconviction relief was denied on February 19, 2008 and Ware filed his Notice of Appeal on March 17, 2008. During the pendency of Ware's direct appeal, the state district court's affirmance of the trial court's denial of the rule 3.850 postconviction motion, and Ware's motion for rehearing, the AEDPA one-year time limitation was tolled until the state district court of appeal issued the Mandate September 9, 2008.

Ware next filed a Petition for Writ of Habeas Corpus in the state trial court on November 17, 2008. The state trial court rejected Ware's "title" and found the pleading was in fact a successive motion for postconviction relief. The state trial court specifically found this second motion was untimely filed and that Ware failed to demonstrate how the allegations in his petition met any of the exceptions which would allow him to file a motion for postconviction relief "outside the two year time limitation imposed by rule 3.850(b)." The state trial court dismissed the petition.

The dismissal of Ware's petition by the state trial court was proper. *See Baker v. State*, 878 So. 2d 1236 (2004), in which the Florida Supreme Court stated:

> We further take this opportunity to explain how we will dispose of petitions for writs of habeas corpus filed by noncapital defendants seeking relief that can be obtained only, if at all, by motion in the sentencing court under Florida Rule of Criminal Procedure 3.850. Henceforth, we will dismiss petitions in which we can clearly discern either that the claims raised therein are procedurally barred or that the petition does not comply with the time requirements of the rule.

*Id.* at 1237. *See also*, *Brown v. McNeil*, 22 So. 3d 741 (Fla. 1st DCA 2009) ("When a motion for post-conviction relief would be untimely, dismissal of a petition for writ of habeas corpus is the appropriate disposition.")(citing *Baker v. State*, 878 So. 2d 1236 (Fla. 2004)).

Furthermore, Ware's appeal of the denial of the petition was frivolous. The writ of habeas corpus is available only if the petitioner shows probable cause to believe that he or she is detained without lawful authority. § 79.01, Fla. Stat.; Florida Rule of Civil Procedure 1.630(d)(5). Ware has not met this standard as he is currently detained by the Florida Department of Corrections under the lawful authority of state court judgments and sentences. (See above).

### Ware's Second and Third Untimely Rule 3.850 Motions Do not Toll the One-Year Limitations Period

Ware's second and third untimely rule 3.850 motions did not toll the one-year time limitation for filing a 28 U.S.C. § 2254 federal petition as the filings failed to meet the "properly filed" requirement for tolling. Time limits on postconviction petitions are "condition[s] to filing," such that an untimely petition would not be deemed "properly filed." *Artuz v. Bennett*, 531 U.S. 4, 11 (2000). A petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

As Ware's successive untimely motions were not "properly filed," the time limitation for purposes of 28 U.S.C. § 2244(d) was not tolled by Ware's filings. The time for filing Ware's federal habeas petition continued to run from September 9, 2008, the date the Mandate issued in Ware's direct appeal of his first rule 3.850 motion for postconviction relief, until February 25, 2011, the date Ware filed the present federal petition for writ of habeas corpus. None of the time Ware's successive post-conviction motions were pending in the Florida courts was tolled. *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir.2001) (properly filed state court collateral pleading filed after expiration of limitations period cannot

toll that period because there is no period remaining to be tolled); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) (even "properly filed" state court petitions must be "pending" in order to toll the limitations period).

Pursuant to the above analysis, Ware's present 28 U.S.C. § 2254 petition was filed more than one year after his conviction was final on direct appeal.

**WARE'S ACTUAL INNOCENCE CLAIM AND THE ONE-YEAR LIMITATION PERIOD**

Ware claims that newly discovered evidence proves that he is actually innocent of the crimes for which he is convicted. Ware alleges that the audio recording of the 911 call made by the victim and played during his trial is different from the one Ware "discovered" when he requested a copy of the audiotape after his trial for the purpose of having it analyzed by a qualified expert. Ware claims the audiotape reveals a voice in the background that belonged to a third party male giving the victim instructions. Ware asserts he was shot before he arrived at the victim's apartment and was unconscious when the 911 call was made by the victim. Ware alleges the victim had not been shot in the head prior to making the 911 call and the third party actually murdered the victim.

In *Frederick v. McNeil*, 300 Fed.Appx. 731, 734 (2008 WL 4925946) (11th Cir. 2008)(unpublished), the Eleventh Circuit pointed out that whether claimed newly discovered evidence would warrant habeas corpus relief is not the standard for determining the one year commencement date under § 2244(d)(1)(D). "Rather, the appropriate standard is whether or not the state prisoner exercised due diligence in discovering the factual predicate for his claim...." *Id.*

Ware fails to show that the purported facts were not known or could not have been discovered earlier with due diligence. The 911 audiotape was played during his trial so

Ware cannot allege the audiotape was "newly discovered." Ware does not allege the tape was not available to the defense prior to trial or that he could not have had it analyzed prior to trial. Ware failed to act with due diligence in discovering the factual predicate for his claim. Title 28 U.S.C. § 2244(d)(1)(D) does not restart the limitations period when corroborating evidence becomes available; if it did, then the statute of limitations would fail in its purpose to bring finality to criminal judgments, for any prisoner could reopen the judgment by locating any additional fact; as a matter of law, new evidence supporting a claim actually made at or before trial cannot form the basis of a new one-year period under § 2244(d)(1)(D).

Furthermore, even if Ware is attempting to raise a free-standing claim of innocence, that claim does not state a ground for federal habeas relief. The function of federal habeas corpus is to redress constitutional errors, not to relitigate state criminal cases. *Herrera v. Collins*, 506 U.S. 390, 401 (1993); *see also, Mize v. Hall*, 532 F.3d 1184, 1195 (11th Cir. 2008)(claim of innocence is used only as avenue to excuse the procedural default of an independent constitutional claim). Since a free-standing claim of actual innocence is not a cognizable claim, Ware is not entitled to employ such a claim to reset his time clock under § 2244(d)(1)(D). *See e.g., Saldana v. Florida*, 2009 WL 6371621 (S.D. Fla. 2009)(Magistrate Judge's report finding that habeas petitioner was not entitled to employ § 2244(d)(1)(D) where actual innocence claim based on newly discovered evidence did not state ground for federal habeas relief), adopted, *Saldana v. Florida*, 2010 WL 1644954 (S.D. Fla. 2010)(unpublished).

In sum, Ware's start date for his limitations period is governed by 28 U.S.C. § 2244(d)(1)(A). Having failed to file his federal petition within one year after his judgment

became final, Ware is not entitled to review of his stale petition unless he can establish that he is entitled to equitable tolling.

**EQUITABLE TOLLING**

The Supreme Court has held that the AEDPA's statutory limitations period set forth in § 2244(d) may be equitably tolled in appropriate cases. *Holland v. Florida*, --- U.S. ----, ----, 130 S.Ct. 2549, 2552 (2010). However, " A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." 130 S.Ct. at 2553.

The decision as to whether to exercise the "court's equity powers ... must be made on a case-by-case basis." *Id.* As a threshold matter, Ware does not demonstrate he exercised "reasonable diligence" to warrant equitable tolling. *See Holland*, 130 S.Ct. at 2565. Ware does not allege any extraordinary circumstance that would have prevented his timely filing his federal petition. Not overcoming the high hurdle of the requisite diligence and not showing that extraordinary circumstances prevented a timely filing, Ware fails to present a justifiable reason to avoid the preclusive effect of the AEDPA's one-year limitations period.

Ware fails to provide a basis upon which to conclude that he could not have obtained the alleged information through the exercise of due diligence before his AEDPA limitations period had expired. As stated herein, Ware claims, in self-serving fashion, he is innocent of the charged murder. To the extent he attempts to employ this claim to avoid the preclusive effect of the AEDPA time bar, his claim of innocence will not assist him. There is no actual innocence exception to the AEDPA limitations period.

The Eleventh Circuit has not decided whether a showing of actual innocence is an

exception to the AEDPA's one-year statute of limitations. *Robertson v. Allen*, 2011 WL 995860 (S.D. Ala. 2011)(unpublished). Without a showing of actual innocence, petitioners "to date" have not garnered review of whether actual innocence operates as an exception to 28 U.S.C. § 2244(d)'s time limitation. *See Scarlett v. Sec'y, Dep't of Corr.*, 2010 WL 4948730 at *7 n. 5 (11th Cir. 2010)(unpublished)("Because Scarlett failed to show actual innocence, we need not, and do not, address the constitutional issue of whether the Suspension Clause requires that an actual innocence claim operate as an exception to AEDPA's one-year limitations period")(citing *Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1333 (11th Cir. 2008)). As the Court held in *Wyzykowski v. Dep't of Corr.*, 226 F.3d 1213, 1218 (11th Cir. 2000), "the factual issue of whether a petitioner can make a showing of actual innocence should be first addressed, before addressing the constitutional issue of whether the Suspension Clause requires such an exception for actual innocence."

Here, it is unnecessary to determine whether actual innocence operates as an exception to AEDPA's one-year limitations period. Even if actual innocence were a recognized exception to the one-year AEDPA statute of limitations, which it is not, Ware does not have new and reliable evidence, which was not presented at trial, of factual innocence of the crime for which he stands convicted.

In *Schlup v. Delo*, 513 U.S. 298, 317 (1995), the Supreme Court stated that a prisoner attempting to make such a showing must raise "new facts" that cast "sufficient doubt upon [his] guilt to undermine confidence in the result of a trial without the assurance that the trial was untainted by constitutional error." In practical terms, this means that Ware must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, Ware must show that it is more

13

likely than not that no reasonable juror would have convicted him in the light of the new evidence. *Id.* at 327 (quoting *Murray v. Carrier*, 477 U.S. at 496).

Ware does not allege facts which would show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Ware fails to address how this "new" evidence of the presence of a third party would negate any of the evidence presented during trial including the stolen items found in his pockets and the Publix grocery bag with more of the victims' property found by the police near Ware's body. Ware does not address the evidence that the revolver, which had been found by the police in Ware's hand at the scene, contained four fired rounds and two unfired shells. The evidence showed the bullets recovered from both Mr. and Mrs. Gilbert had been fired by the revolver found in Ware's hand. Ware also does not address how this "new" evidence would overcome the DNA evidence which showed Ware's DNA was found on both the victims and throughout the victims' apartment. Even if there were an actual innocence exception to the AEDPA's statute of limitations, the proposed evidence on which Ware relies falls far short of the standard required to establish actual innocence to excuse his untimeliness, and Ware is not entitled to equitable tolling.

Accordingly, the Court orders:

That Ware's petition is denied. The Clerk is directed to enter judgment against Ware and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because

Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on November 14, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Brandon Scott Ware